# EXHIBIT 'A'

## <u>PLAINTIFF'S BRIEF SUMMARY IN SUPPORT OF COMPLAINT TO THE FEDERAL DC DISTRICT COURT</u>

1. PLAINTIFF-- Farah Naz enjoyed an unblemished career of nearly two decades of service with the federal government starting from November 20, 2000 till January 29, 2021, and enjoyed the esteem and respect of her colleagues at both the Department of Commerce and the Department of Energy ("DOE").

2. Plaintiff joined the U.S. Federal government after graduating with a Master's in Financial Economics for Public Policy from American University, Washington, DC. She already had one Master's in Applied Economics from abroad.

3. Plaintiff started her federal civil service as an economist with the Bureau of Economic Analysis under the US. Department of Commerce in November 20, 2000 and worked there for almost 17 years, Later, on January 08, 2017 she joined the US. Department of Energy as an economist for a new position with the goal of advancing her Federal career to a higher level.

4. Unfortunately, being evaluated on her merits and the quality of her work came to an abrupt half when Plaintiff made the fateful decision to aid a colleague in his claims of race discrimination against the DOE.

5. When Plaintiff spoke out against the rampant race discrimination that pervades the Agency, she became the victim of a sustained and pretextual campaign designed to remove her from her position.

6. Despite finding success in a transfer position and having the support of numerous DOE employees who attest to Plaintiff's strengths as an employee and her desirability as a hire, Plaintiff was terminated, underscoring management's determination to punish her for having dared to speak out against them.

7. Plaintiff performed her job capably and without critique for the first two years at the Department of Energy, but as soon as she agreed to testify against Dr. Kelly Perl, a hitherto unimaginable degree of scrutiny was trained on Plaintiff's every action, management grew openly hostile to her, mocked and plotted against her, and erected and resurrected a series of Byzantine obstacles to Plaintiff's success that were ultimately used to destroy Plaintiff's storied career. Plaintiff's protected activity neatly divides, on the one hand, the cooperative, respected, and successful career she enjoyed in federal

government service and, on the other, the railroading perpetrated by Agency management which ultimately resulted in her unwarranted and unjustifiable termination.

8.  Based on the following, this court ought to conclude that the only reasonable explanation for this sea change is that Plaintiff was illegally punished for having participated in protected activity. As such, this court ought to reinstate Plaintiff with backpay and award attorney's fees, compensatory damages, and all other relief it judges just and proper.

9.   Plaintiff's removal from service is the product of unlawful discrimination on the basis of race (Asian), religion (Islam), and national origin (Middle East), as well as in reprisal for Plaintiff having engaged in protected activities.

**I, <u>Farah Naz</u> do hereby declare under penalty of perjury under the laws of the United States of America that the above statements are true and correct to the best of my ability.**

**Date:** ~~July~~ June 14, 2022

**Signature:**

# EXHIBIT 'B'

## <u>PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT OF COMPLAINT</u>

### (Timeline of Discriminatory Events in retaliation of participating in protected activity)

**1.** From **January 8, 2017 to January 29, 2021**, Plaintiff worked at the U.S. Department of Energy, Office of Energy Consumption and Efficiency Analysis ("OECEA") in Washington, D.C.

2. At all relevant times, Plaintiff worked as an Industrial Economist, GS-12, with the OECEA at 1000 Independence Avenue, SW, Washington, DC 20585. Report of Investigation ("ROI")**19-0015-HQ-EI at 130.**

**3.** Plaintiff is a person of Middle Eastern descent with a pale-yellow complexion. **Id.**

**4.** On or **about October 12, 2017,** Plaintiff participated in protected activity by testifying in favor of her former colleague, Christopher Dickerson, who filed an EEO complaint of race discrimination against Dr. Kelly Perl. **ROI 19-0015-HQ-EI at 869.**

**5.** Before Plaintiff participated in protected activity, she enjoyed a cordial and productive relationship with Dr. Perl.

**6.** Dr. Perl was aware of Plaintiff's close relationship with Mr. Dickerson, and often saw them chatting in a friendly manner.

**7.** In or around **March 2018**, Mr. Dickerson left the DOE.

**8.** Upon information and belief and based on the sea change in Dr. Perl's attitude toward Plaintiff, becoming hostile, antagonistic, and unproductive, Dr. Perl became aware of Plaintiff's participation in protected activity in or around **April 2018.**

**9.** In or around April 2018, Dr. Perl threatened to remove Plaintiff from her position several times. **ROI 19-0015-HQ-EI at 140.**

**10**. On or about **April 8, 2018,** Dr. Perl boasted about firing other employees in the context of her comments about terminating Plaintiff. Id.

**11**. In or around **April 2018,** Dr. Perl told Plaintiff that "non-native people" like Plaintiff "have difficulty" writing, and asked Plaintiff whether she had attended school in the United States, even though Plaintiff has two master's degrees from American University. **ROI 19-0015- HQ-EI at 140, 1166.**

**12**. On or about **April 11, 2018,** Dr. Perl screamed at and threatened to fire Plaintiff because of a hotel reservation Plaintiff had made for a conference she would be attending in Florida. **ROI 19-0015-HQ-EI at 490.**

**13.** Upon information and belief, Dr. Perl's putative concerns over the price of the hotel were unfounded, as the hotel's rate was within the acceptable range for a hotel room and Dr. Perl herself was staying at the same hotel. Nevertheless, Dr. Perl directed Plaintiff to cancel her reservation and book a remote hotel located 35 minutes away by car.

**14.** In or around **April 2018**, given the harassment to which Dr. Perl had begun subjecting Plaintiff, Plaintiff requested a transfer from her then-second-line supervisor, James Turnure.

**15.** In response, Mr. Turnure suggested that Plaintiff explore other opportunities, and so Plaintiff scheduled meetings with Mr. Turnure, John Maples, John McIntosh, Erik Kreil, Ian Mead, Debra Coaxum, Angelina LaRose, Vergina Gibson, Erin Boedecker.

**16.** On or **about June 28, 2018,** Dr. Perl found the meetings Plaintiff had scheduled with Mr. Maples, Mr. McIntosh, Mr. Kreil, Mr. Mead, Mr. Turnure, Ms. Coaxum, Ms. LaRose, Ms. Gibson, and Ms. Boedecker and emailed them to badmouth Plaintiff suggesting that Plaintiff would be "spend[ing] [their] valuable time complaining" and asking them to decline future invitations to meet from Plaintiff. **ROI 19-0015-HQ-EI at 206.**

**17.** On or about **October 11, 2018** and **November 3, 2018,** Plaintiff asked that Dr. Perl nominate her for the OEA Innovation Award and Plaintiff pointed out her initiatives in support of the requested nomination. **ROI 19-0015-HQ-EI at 208-10.**

**18**. **On October 12, 2018** at 9:33am, Dr. Perl asked Plaintiff to describe what she "did to bring open communications and improve professionalism and collaboration to the industrial team," stating that once she had "that in hand" she would "consider nominating [Plaintiff] for the award." **ROI 19-0015-HQ-EI at 657.**

**19**. **On October 12, 2018** at 9:42am, Dr. Perl forwarded her 9:33am response to Plaintiff to Mr. Turnure and Mr. Mead, stating "[Plaintiff] is nominating herself for an innovation award. Forwarding this because she will probably complain to you guys when she finds out I didn't nominate her. Do we have chutzpah awards? I'd nominate her for that. ☺" Id.

**20**. **On October 12, 2018** at 9:44am, Mr. Turnure responded to Dr. Perl and Mr. Mead, stating "We probably should have a chutzpah award." **Id.**

**21**. **On October 12, 2018** at 12:29pm, Plaintiff responded to Dr. Perl's request, listing eight achievements in support of her nomination. **ROI 19-0015-HQ-EI at 208-10.**

**22. On October 16, 2018**, Dr. Perl wrote to Plaintiff, copying Mr. Turnure, stating that she had "considered" Plaintiff's achievements but that she was unable to nominate Plaintiff for an innovation award and asking her to "Please let [Dr. Perl] do the nominations from now on. ☺" **ROI 19-0015-HQ-EI at 208.**

**23.** In or around **October 2018**, Dr. Perl denied Plaintiff the opportunity to attend intermediate Excel training. **ROI 19-0015-HQ-EI at 156.**

**24.** On or about **November 3, 2018**, Dr. Perl denied Plaintiff the opportunity to attend leadership

training. **Id.**

**25.** On or **about June 21, 2018**, Plaintiff submitted a paper to Dr. Perl entitled "Energy Use in U.S. Agriculture/Irrigation with emphasis on 'California State.'" **ROI 19-0015-HQ-EI at 214.**

**26.** On **August 24, 2018**, Dr. Perl emailed Plaintiff, copying Mr. Mead, copying Mr. Turnure, and blind copying Stephen Durbin, directing Plaintiff to add citations where missing, delete and rewrite the conclusion, and to use proper reference form in the bibliography. Dr. Perl concluded that if Plaintiff successfully completed these tasks by the end of the performance period, she would consider the paper a deliverable for the 10-page paper component of her writing element. **ROI 19-0015-HQ-EI at 236.**

**27.** In or around **May 2017**, before Plaintiff had participated in protected activity, Plaintiff wrote a paper entitled, "Methods of Paper Manufacturing in OCED vs. non-OECD Countries" in a substantially similar style and manner and received no such critical feedback. **ROI 19-0015-HQ-EI at 21.**

**28.** On or about **November 8, 2018**, Dr. Perl informed Plaintiff that she would not earn a rating of Meets Expectations and might be placed on a PIP because of alleged writing deficiencies' **19-0015-HQ-EI at 22-3.**

**29. On November 13, 2018**, Plaintiff emailed Mr. Turnure to state that Dr. Perl bullied her, retaliated against her, maintained a hostile work management style, and continued the same discriminatory work practices that she had directed toward Mr. Dickerson. **ROI 19-0015-HQEI at 479.** In this email, Plaintiff requested a transfer away from Dr. Perl's team.

**30. On November 29, 2018**, by email, Dr. Perl informed Plaintiff that she would be placing her on a 90-day PIP. **ROI 19-0015-HQ-EI at 666.**

**31.** Dr. Perl placed Plaintiff on a PIP for allegedly failing to meet expectations as to critical element 3, i.e., "Writes articles, reports and documentation." **ROI 19-0015-HQ-EI at 669.**

**32.** The paper "Energy Use in U.S. Agriculture/Irrigation with emphasis on 'California State'" only accounted for 20% of critical element 3. **ROI 19-0015-HQ-EI at 879.**

**33. On December 3, 2018**, Dr. Perl issued Plaintiff a PIP. **ROI 19-0015-HQ-EI at 872.**

**34. On December 3, 2018**, Dr. Perl told Plaintiff that she had forfeited her right to participate in the alternative work schedule and telework programs as a result of her performance not meeting expectations for critical element 3. **ROI 19-0015-HQ-EI at 668.**

**35**. **On December 14, 2018,** Plaintiff filed a formal EEO Complaint alleging the Dr. Perl was discriminating and retaliating against her. **ROI 19-0015-HQ-EI at 4.**

**36**. On or about **December 15, 2018,** Plaintiff grieved the PIP through her union, as Dr. Perl had not given Plaintiff notice that the paper, she submitted needed corrections. **ROI 19-0015-HQEI**

**at 29.**

**37**. On or **about December 22, 2018,** Plaintiff's PIP was suspended through the grievance procedure. **ROI 19-0015-HQ-EI at 29.**

**38**. On or **about January 4,** Plaintiff resubmitted "Energy Use in U.S. Agriculture/Irrigation with emphasis on 'California State.'" **ROI 19-0015-HQ-EI at 872.**

**39**. On **January 16, 2019,** Dr. Perl gave Plaintiff a deficient and untimely performance review, rating her as "failing." **ROI 19-0015-HQ-EI at 731, 872.**

**40**. **On January 9, 2019,** Dr. Perl denied Plaintiff Introduction to Excel training. **ROI 19-0015-HQ-EI at 203.**

**41**. **On January 31, 2019,** Dr. Perl denied Plaintiff Advanced Excel training, stating that Plaintiff could not comprehend the material. **ROI 19-0015-HQ-EI at 163.**

**42**. On or about **February 12, 2019,** Dr. Perl denied Plaintiff Intermediate Excel training.

**43**. On **February 28, 2019,** Dr. Perl denied Plaintiff Advanced Excel training by refusing to reschedule a work meeting. **ROI 19-0015-HQ-EI at 331.** In response, Plaintiff characterized this behavior as "[r]retaliation" and stated that it was creating a "Persistent Hostile and Discriminatory Work Environment." **ROI 19-0015-HQ-EI at 330.**

**44**. On or about **March 7, 2019,** Dr. Perl denied Plaintiff Introduction to Intermediate Excel, Part 1 training.

**45**. After a **March 7, 2019** meeting that Dr. Perl did not attend, Dr. Perl told Plaintiff that she was concerned about her behavior during the meeting, accusing Plaintiff of excessive frowning. During this meeting, Dr. Perl raised her voice, refused to allow Plaintiff to explain herself, slammed her hand on her desk several times, and at the end of the meeting screamed at Plaintiff to get out of her office. **ROI 19-0015-HQ-EI at 160, 201-2.**

**46**. On or about **March 11, 2019,** Dr. Perl denied Plaintiff Introduction to Intermediate Excel, Part 2 training.

**47**. On or about **March 14, 2019,** Dr. Perl was removed as Plaintiff's supervisor. **ROI 19-0015-HQ-EI at 873.**

**48**. On or about **March 15, 2019,** Dr. Perl denied Plaintiff Introduction to Advanced Excel training.

**49**. In or around **March 2019**, upon information and belief Matthew Skelton told Peter Gross about the EEO complaint Plaintiff filed against Dr. Perl. **ROI 19-0015-HQ-EI at 871.**

**50**. Upon information and belief, Dr. Perl and Mr. Turnure were friendly and poked fun at Plaintiff behind her back. **ROI 19-0015-HQ-EI at 657.**

**51**. Upon information and belief, Mr. Turnure blamed Plaintiff for Dr. Perl's removal. **ROI 19-0015-HQ-EI at 871.**

**52**. **April 24, 2019**, Mr. Turnure reissued Plaintiff a 90-day PIP. **ROI 19-0015-HQ-EI at 873.**

**53**. On or about **April 24, 2019**, Plaintiff asked Mr. Turnure to reschedule this meeting so that a National Treasury Employees ("NTE") Union representative could be present.

**54**. On or about **April 24, 2019**, Mr. Turnure disregarded Plaintiff's request and issued her a PIP

**55**. At no point prior to reissuing the PIP had Mr. Turnure directly supervised Plaintiff. **ROI 19-0015-HQ-EI at 873.**

**56**. Upon information and belief, all of Mr. Gross's negative actions toward Plaintiff were in retaliation for the EEO complaint she made against Dr. Perl in 2018. **ROI 19-0114-HQ-EI at 89.**

**57**. On or about **May 13, 2019**, Mr. Turnure suspended Plaintiff's eligibility to participate in alternative work schedule (AWS) and telework. **ROI 19-0015-HQ-EI at 879.**

**58**. Starting in or around **May 2019** and continuing thereafter, Peter Gross failed Plaintiff for an assignment she completed adequately.

**59**. On or about **May 31, 2019**, Plaintiff told Mr. Turnure that she thought he forfeited her AWS because she is a minority woman. **ROI 19-0015-HQ-EI at 880.**

**60**. In or around **June 2019**, Mr. Turnure appointed Peter Gross as acting team lead. **ROI 19-0015-HQ-EI at 871.**

**61**. On or about **June 12, 2019**, Mr. Gross told Plaintiff during a meeting that she would be the only member of the five-person Industrial Team to report to Mr. Turnure **"for a long time." ROI 19-0015-HQ-EI 880-1.**

**62**. From on or about **July 24, 2019** onward, Mr. Gross constantly criticized Plaintiff's work, stating that it was deficient and inaccurate. **ROI 19-0114-HQ-EI at 11.**

63. From on or about **July 24, 2019 onward**, Mr. Gross began tweaking assignments that he gave to Plaintiff, sending different instructions every time Plaintiff asked Mr. Gross for instructions. **ROI 19-0114-HQ-EI at 11.**

64. From on or about **July 24, 2019** onward, Mr. Gross constantly argued that Plaintiff's calculations were being performed incorrectly. **ROI 19-0114-HQ-EI at 11.**

65. From on or about July 24, 2019 onward, Mr. Gross began to micromanage Plaintiff. **ROI 19-0114-HQ-EI at 92.**

66. From on or about **July 24, 2019** onward, Mr. Gross began to bully Plaintiff.

67. From **2019 to April 2020**, Mr. Gross denied Plaintiff medical telework in retaliation for filing a complaint against Dr. Kelly Perl. **ROI 19-0114-HQ-EI at 89.**

68. From in or around **August 2019** onward, Mr. Gross began to misinform Plaintiff about her projects. **ROI 19-0114-HQ-EI at 97.**

69. On or about **September 18, 2019**, Mr. Turnure gave Plaintiff a "Fails to Meet Expectations" ("FME") rating for two of four elements for her FY 2019 performance evaluation. **ROI 19-0114-HQ-EI at 661.**

70. In or around **October 2019**, Plaintiff filed an EEO complaint against Mr. Gross.

71. In or **around January 2020**, Mr. Gross denied Plaintiff an automatic grade increase from GS-12 Step 8 to GS-12 Step 10. **ROI 19-0114-HQ-EI at 134.**

72. On or **about February 5, 2020**, Mr. Gross denied Plaintiff's in-place, active medical telework arrangement in retaliation for the EEO complaint Plaintiff filed against him in or around **October 2019. ROI 19-0114-HQ-EI at 90.**

73. **On April 28, 2020,** Plaintiff was placed on a Performance Demonstration Period plan ("PDP") and notified that her performance was likely to result in an FME rating for critical elements 1, 2, and 3, as well as an overall rating of FME for the 2020 performance appraisal period. **ROI 19-0114-HQ-EI at 340.**

74. Upon information and belief, after **April 2020** Mr. Gross deliberately kept meetings on Plaintiff's busy working days, especially during the times when she was supposed to be focused on PDP assignments. **ROI 19-0114-HQ-EI at 662.**

75. Upon information and belief, Mr. Gross sent long emails to Plaintiff so that she would become distracted from her work and be unable to successfully complete her PDP. **Id.**

76. Each of the projects that Mr. Gross assigned to Plaintiff as part of her PDP involved extraordinary amounts of work on unrealistic deadlines. **ROI 19-0114-HQ-EI at 93, 662.**

**77**. On **June 8, 2020**, during her mid-year progress review, Plaintiff was informed that her performance was likely to result in an overall rating of FME.

**78. On August 13, 2020**, the Agency issued Plaintiff a Notice of Proposed Removal for failure to successfully complete the PDP. **ROI 19-0114-HQ-EI at 661.**

**79**. On **October 19, 2020,** Mr. Gross held a performance review meeting over the phone in which he was verbally abusive and constantly belittled, humiliated, and insulted Plaintiff's performance with negative comments; this added to Plaintiff's considerable mental and

emotional stress.

**80**. On **October 20, 2020,** as a result1 of this persistent insult, stress, and metal tension, Plaintiff suffered a **Transient Ischemic Attack ("TIA")** and was hospitalized for an extended period of

**time at Suburban Hospital, Bethesda, MD. Plaintiff sustained permanent physical and mental injury as a result of this TIA and is still undergoing treatment for those medical conditions.**

( See Everson-Rose SA, Roetker NS, Lutsey PL, Kershaw KN, Longstreth WT Jr, Sacco RL, Diez Roux AV, Alonso A. "Chronic stress, depressive symptoms, anger, hostility, and risk of stroke and transient ischemic attack in the multiethnic study of atherosclerosis." Stroke. 2014 Aug; 45(8):2318-23. doi: 10.1161/STROKEAHA.114.004815. Epub2014 Jul 10. PMID: 25013018; PMCID: PMC4131200).

(https://pubmed.ncbi.nlm.nih.gov/25013018/ ("Higher levels of stress, hostility, and depressive symptoms are associated with significantly increased risk of incident stroke or transient ischemic attacks in middle-aged and older adults. Associations are not explained by known stroke risk factors."), accessed on July 16, 2021)

# 81. Plaintiff was removed and terminated abruptly from her 22 years of Federal service effective January 29, 2021.

I, Farah Naz, do hereby declare under penalty of perjury under the laws of the United States of America that the above statements are true and correct to the best of my ability.

Date: ~~July~~ June 14, 2022

Signature:

6/14/2022



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Farah Naz a/k/a
Katherina A.,[1]
Petitioner,

v.

Jennifer M. Granholm,
Secretary,
Department of Energy,
Agency.

Petition No. 2022000814

MSPB No. DC-0432-21-0263-I-1

<u>DECISION</u>

On October 4, 2021, Petitioner filed a timely petition with the Equal Employment Opportunity Commission (EEOC or Commission) asking for review of a Final Order issued by the Merit Systems Protection Board (MSPB) concerning her claim of discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq.

<u>BACKGROUND</u>

At the time of events giving rise to this complaint, Petitioner worked as an Industrial Economist, GS-0110-12, at the Agency's Office of Energy Consumption and Efficiency Analysis, Energy Information Administration in Washington, D.C.

On August 13, 2020, Petitioner's first-line supervisor, a Supervisory Operations Research Analyst, issued Petitioner a Notice of Proposed Removal for Unacceptable Performance (Notice). Initial Appeal File at 8-12. The Notice stated that Complainant failed to demonstrate the ability to satisfactorily execute the essential duties and responsibilities of her position during a 30-calendar day Performance Demonstration Period. <u>Id.</u> In support, the Notice explained that Petitioner received a Performance Counseling Letter in January 2020, which notified Petitioner that her performance was not at the "Meets Expectations" level in three of four critical elements on her performance plan. <u>Id.</u>

---

[1] This case has been randomly assigned a pseudonym which will replace Petitioner's name when the decision is published to non-parties and the Commission's website.

2                                                                    2022000814

The Notice stressed that Petitioner was informed of deficiencies in her performance at various times in the rating period, including, among other things, failure to attend regularly scheduled meetings, failure to follow instructions and guidance, and failure to complete any of four assigned tasks during the Performance Demonstration Period. On January 29, 2021, the Director of the Energy Information Administration sustained the proposed removal. Initial Appeal File at 14-17.

Petitioner alleged that the Agency discriminated against her on the basis of reprisal for prior protected EEO activity when she was removed from the Agency.[2] An MSPB Administrative Judge (AJ) issued an initial decision on the written record after Petitioner withdrew her request for a hearing, finding that the Agency had not engaged in discrimination as alleged by Petitioner and affirming Petitioner's removal. The MSPB AJ determined that the Agency established valid performance standards and critical elements, which were communicated to Petitioner. The MSPB AJ noted that the Agency established that Petitioner failed to meet expectations before and after her placement on the Performance Demonstration Period plan.

The MSPB AJ concluded that there was no nexus between Petitioner's prior EEO complaints and her removal. The MSPB AJ disagreed with Petitioner's assertion that her supervisor created a hostile work environment and concluded that the supervisor's actions were attempts to provide guidance and support. According to the MSPB AJ, Petitioner's complaints of a hostile work environment referenced "micromanagement, unfair assignments, and unrealistic deadlines among other claims." Moreover, the AJ determined, Petitioner failed to show that the Director, as the deciding official, had knowledge of Petitioner's prior EEO activity. Further, the MSPB AJ found no evidence that Petitioner's participation in a coworker's EEO complaint, approximately four years before Petitioner's removal, was related to the removal. Regarding Petitioner's assertion that her "removal from service is the product of unlawful discrimination on the basis of race (Asian), religion (Islam), and national origin (Middle East)," the MSPB AJ noted that the only reference to additional bases of discrimination was in the statement of issues. The MSPB AJ concluded that Petitioner's bare allegation and conclusory statement regarding the additional bases were insufficient to meet Petitioner's burden of proof to establish discrimination as alleged.

Petitioner then filed the instant petition.[3]

---

[2] The record indicates that Petitioner asserted that the termination was due to race, color, national origin, and/or religion. However, the MSPB AJ's decision and Petitioner's appeal focus on reprisal.

[3] Petitioner's attorney submitted a request for an extension of time to file a statement or brief in support of the petition. However, the request was denied pursuant to 29 C.F.R. § 1614.304(b)(3), which requires concurrent submission of the petition for review and supporting statement. As such, the statement was not considered on appeal.

3                                    2022000814

## ANALYSIS AND FINDINGS

EEOC Regulations provide that the Commission has jurisdiction over mixed case appeals on which the MSPB has issued a decision that makes determinations on allegations of discrimination. 29 C.F.R. § 1614.303 et seq. The Commission must determine whether the decision of the MSPB with respect to the allegation of discrimination constitutes a correct interpretation of any applicable law, rule, regulation or policy directive, and is supported by the evidence in the record as a whole. 29 C.F.R. § 1614.305(c).

In finding no discrimination, the MSPB AJ relied upon the MSPB's decision in Savage v. Dep't of the Army, 122 M.S.P.R. 612 (2015). In Savage, the MSPB, inter alia, determined that the analytical framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), was not applicable to its proceedings. Savage, 122 M.S.P.R. at 637. In rejecting the McDonnell Douglas framework, the MSPB maintained that the MSPB's authority to adjudicate and remedy alleged violations of 42 U.S.C. §2000e-16 is a matter of civil service law. Id.

We find that the MSPB AJ erred by not applying the McDonnell Douglas analysis in deciding Petitioner's removal claim. However, we have analyzed this case according to the McDonnell Douglas paradigm and find that the MSPB AJ correctly determined that Petitioner did not establish that the Agency discriminated against her in reprisal for protected activity.

To prevail in a disparate treatment claim, Petitioner must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Petitioner must first establish a prima facie case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a factor in the adverse employment action. McDonnell Douglas, 411 U.S. at 802; Furnco Constr. Corp. v. Waters, 438 U.S. 567 (1978). Once Petitioner has established a prima facie case, the burden then shifts to the Agency to articulate a legitimate, nondiscriminatory reason for its actions. Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981). If the Agency is successful, the burden reverts back to Petitioner to demonstrate by a preponderance of the evidence that the Agency's reason(s) for its action was a pretext for discrimination.

For her claim of reprisal, Complainant must show that: (1) she engaged in a protected activity; (2) the agency was aware of the protected activity; (3) subsequently, she was subjected to adverse treatment by the agency; and (4) a nexus exists between the protected activity and the adverse treatment. Whitmire v. Dep't of the Air Force, EEOC Appeal No. 01A00340 (Sept. 25, 2000).

Upon review of the record, the Commission finds that even assuming, arguendo, that Petitioner established a prima face case of discrimination based on reprisal for protected EEO activity or any additional basis, the Agency provided legitimate, nondiscriminatory reasons for Petitioner's removal.

Specifically, the record is consistent with the Agency's explanation, and the MSBP AJ's finding, that management officials clearly detailed and described Petitioner's performance deficiencies throughout the relevant period. The record supports the Agency's explanation that Petitioner failed to improve despite ongoing communication regarding performance deficiencies.

Petitioner has not established that the Agency's reasons are pretextual or unworthy of credence. Moreover, the Commission has long held that an agency has broad discretion to set policies and carry out personnel decisions and should not be second-guessed by the reviewing authority absent evidence of unlawful motivation. See Burdine, 450 U.S. at 259; Vanek v. Dep't of the Treasury, EEOC Request No. 05940906 (Jan 16, 1997). Accordingly, the Commission agrees with the MSPB's ultimate finding that Petitioner did not establish that her removal was based on reprisal for prior protected activity.

## CONCLUSION

Based upon a thorough review of the record, it is the decision of the Commission to CONCUR with the final decision of the MSPB finding no discrimination. The Commission finds that the MSPB's decision constitutes a correct interpretation of the laws, rules, regulations, and policies governing this matter and is supported by the evidence in the record as a whole.

## PETITIONER'S RIGHT TO FILE A CIVIL ACTION (W0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court, based on the decision of the Merit Systems Protection Board, **within thirty (30) calendar days** of the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests.

5                                    2022000814

Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

_Carlton M. Hadden_

Carlton M. Hadden, Director
Office of Federal Operations


May 23, 2022
Date

## LIST OF DEFENDANTS FROM PAGE 1 OF COMPLAINT

### Defendant 2.

| | |
|---|---|
| **Name** | Peter Gross |
| **Title:** | Team Lead for Industrial at U.S. Energy Information Administration (EIA) |
| **Work Address** | 1000 Independence Ave, SW |
| | Washington, DC, U.S.A. |
| | District of Columbia, 20585 |
| **Phone Number** | 202-586-8822 |
| **Email Address** | Peter.Gross@eia.gov |

### Defendant 3.

| | |
|---|---|
| **Name** | Lynn Westfall |
| **Title** | Director (Office of Energy Markets &Financial Analysis at EIA |
| **Work Address** | 1000 Independence Ave, SW |
| | Washington, DC, U.S.A. |
| | District of Columbia, 20585 |
| **Phone Number** | 202-586-3811 |
| **Email Address** | Lynn.Westfall@eia.gov |

### Defendant 4.

| | |
|---|---|
| **Name** | James Turnure |
| **Title** | Senior Advisor, Energy Analysis at EIA |
| **Work Address** | 1000 Independence Ave, SW |
| | Washington, DC, U.S.A. |
| | District of Columbia, 20585 |
| **Phone Number** | 202-586-1762 |
| **Email Address** | James.Turnure@eia.gov |

**Defendant No 5.**

| | |
|---|---|
| **Name** | Kelly Perl |
| **Title** | Senior Economist at EIA |
| **Work Address** | 1000 Independence Ave, SW, |
| | Washington, DC |
| | USA, 20585 |
| **Phone Number** | 202-586-1743 |
| **Email Address** | Kelly.Perl@eia.gov |

# NOTICE OF APPEAL/PETITION
# TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

OFFICE OF FEDERAL OPERATIONS
P.O. Box 77960
Washington, DC  20013-8960

**Complainant Information:** (Please Print or Type)

| | |
|---|---|
| Complainant's name (Last, First, M.I.): | Naz, Farah |
| Home/mailing address: | 13414 Ansel Terrace |
| City, State, ZIP Code: | Germantown, MD 20874 |
| Daytime Telephone # (with area code): | 301.602.5623 |
| E-mail address (if any): | farahnaz16@hotmail.com |

**Attorney/Representative Information (if any):**

| | |
|---|---|
| Attorney name: | Conor Ahern |
| Non-Attorney Representative name: | |
| Address: | 1825 K Street NW, Suite 750 |
| City, State, ZIP Code: | Washington, DC 20009 |
| Telephone number (if applicable): | 202-325-2581 |
| E-mail address (if any): | conor.ahern@leschtlaw.com |

**General Information:**

| | |
|---|---|
| Name of the agency being charged with discrimination: | Department of Energy |
| Identify the Agency's complaint number: | Agency Case No. 19-0114-HQ-EI |
| Location of the duty station or local facility in which the complaint arose: | Washington, D.C. |
| Has a **final action** been taken by the agency, an Arbitrator, FLRA, or MSPB on this complaint? | _X_ Yes; Date Received _Apr 22, 2021_ (Remember to attach a copy)<br>____ No<br>____ This appeal alleges a breach of settlement agreement |
| Has a complaint been filed on this same matter with the EEOC, <u>another</u> agency, or through any <u>other</u> administrative or collective bargaining procedures? | ____ No<br>_X_ Yes (Indicate the agency or procedure, complaint/docket number, and attach a copy, if appropriate) EEOC 19-0015-HQ-EI MSPB (DC-0432-21-0263-I-1) |
| Has a civil action (lawsuit) been filed in connection with this complaint? | _X_ No<br>____ Yes **(Attach a copy of the civil action filed)** |

**NOTICE**: Please **attach a copy of the final decision or order** from which you are appealing. If a hearing was requested, please attach a copy of the agency's final order and a copy of the EEOC Administrative Judge's decision. Any comments or brief in support of this appeal MUST be filed with the EEOC **and** with the agency **within 30 days** of the date this appeal is filed. The date the appeal is filed is the date on which it is postmarked, hand delivered, or faxed to the EEOC at the address above.

| | |
|---|---|
| Signature of complainant or complainant's representative: | *[signature]* |
| Date: | May 19, 2021 |

**EEOC Form 573 REV 1/01**

# EEOC 573.Notice.Appeal

**Final Audit Report**                                                                                                2021-05-19

| | |
|---|---|
| Created: | 2021-05-19 |
| By: | Conor Ahern (Conor.Ahern@leschtlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAKA1UfPSkCPh-qUU41mGePirTu3FpLZIR |

## "EEOC 573.Notice.Appeal" History

📄 Document created by Conor Ahern (Conor.Ahern@leschtlaw.com)
2021-05-19 - 8:35:54 PM GMT- IP address: 100.33.46.183

📧 Document emailed to Farah Naz (farahnaz16@hotmail.com) for signature
2021-05-19 - 8:36:19 PM GMT

📄 Email viewed by Farah Naz (farahnaz16@hotmail.com)
2021-05-19 - 8:46:48 PM GMT- IP address: 108.18.216.194

✍️ Document e-signed by Farah Naz (farahnaz16@hotmail.com)
Signature Date: 2021-05-19 - 8:47:56 PM GMT - Time Source: server- IP address: 108.18.216.194

✅ Agreement completed.
2021-05-19 - 8:47:56 PM GMT

**Adobe Sign**